Difference = $40,000

LESTER H. KRABBENHOFT AND ANNA KRABBENHOFT, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26561-87.         Filed June 19, 1990.

*Jerry D. Larson,* for the petitioners.
*John C. Schmittdiel,* for the respondent.

## OPINION

CLAPP, *Judge:* Respondent determined a $26,444 deficiency in petitioners' Federal gift tax for the calendar quarter ending June 30, 1981. Following concessions, the issues are (1) whether petitioners' sale of land to a family member at the interest rate set by section 1.483-1(d)(1)(ii)(B), Income Tax Regs., prevents respondent from using a higher market interest rate for gift tax purposes, and (2) if not,

whether respondent correctly determined the amount of the gift. All section references are to the Internal Revenue Code of 1954 for the quarter in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. The case was submitted fully stipulated under Rule 122. Petitioners resided in Sabin, Minnesota, when they filed their petition.

On June 29, 1981, petitioners sold farmland worth $404,000 to their sons, Dennis and Ralph Krabbenhoft (the purchasers). The land was sold pursuant to a contract for deed that provided for a purchase price of $400,000, an interest rate of 6 percent, and 30 annual installment payments of $29,060 commencing in June 1982. In the event of the death of either or both petitioners, the purchasers were required to prepay the contract in an amount equal to the State and Federal estate taxes attributable to the inclusion of the contract in petitioners' estates. Respondent used an interest rate of 11 percent to discount the payments on the contract, and concluded that the contract had a present value of $252,642. See *Blackburn v. Commissioner,* 20 T.C. 204, 207 (1953). Respondent asserts that the $151,358 difference between this amount and the $404,000 fair market value of the property was a gift made by petitioners to the purchasers. See sec. 2512(b).

Section 483 provides in relevant part—

SEC. 483(a). AMOUNT CONSTITUTING INTEREST.—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

(b) TOTAL UNSTATED INTEREST.—For purposes of this section, the term "total unstated interest" means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

(1) the sum of the payments to which this section applies which are due under the contract, over

(2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

For purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary. * * *

(c) PAYMENTS TO WHICH SECTION APPLIES.—

(1) IN GENERAL.—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

    (A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

    (B) under which, using a rate provided by regulations prescribed by the Secretary of purposes of this subparagraph, there is total unstated interest.

Any rate prescribed for determining whether there is total unstated interest for purposes of subparagraph (B) shall be at least one percentage point lower than the rate prescribed for purposes of subsection (b)(2).

The regulation referenced by section 483(c)(1)(B) established a 6-percent interest rate. Sec. 1.483-1(d)(1)(ii)(B), Income Tax Regs. Because the same 6-percent interest rate was used in the contract, the contract for the sale of the property contained no unstated interest. Accordingly, section 483 did not apply to the contract.

Petitioners point out that section 483(a) states that section 483 applies "For purposes of this title." They therefore argue that since section 483 imputes no interest, respondent may not determine that for gift tax purposes the contractual interest rate was insufficient. We faced the same argument in *Ballard v. Commissioner*, T.C. Memo. 1987-128, revd. 854 F.2d 185 (7th Cir. 1988), which involved similar facts. In that case we held for respondent, saying that—

manipulation of the tax laws to characterize ordinary interest income as capital gain was the specific problem Congress intended to cure when it enacted section 483. * * *

    *     *     *     *     *     *     *

proper valuation in gift tax cases looks to fair market value and its notions of a willing buyer and willing seller. Section 483 has nothing to do with valuation. The purpose of section 483 is to recharacterize portions of payments on certain installment sales of property as interest payments when not enough interest has been provided for in the installment contract. We are not concerned here with the characterization as ordinary income or capital gain of any installment payments petitioner may receive under that contract in the future. We are concerned with the present value of all the payments she will receive under that contract. From a careful reading of section 483, its regulations, legislative history, and pertinent case law, we cannot find that the interest rates published

in the regulations thereunder could or should be relied on for gift tax valuation purposes. [*Ballard v. Commissioner, supra,* 56 P-H Memo T.C. par. 87,128 at 650-651, 53 T.C.M. 325-326 (1987). Fn. ref. omitted.]

*Ballard* was reversed on appeal by the Seventh Circuit. The instant case would be appealed to the Eighth Circuit, so we are not bound by the holding of the Seventh Circuit. See *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). We have considered the reasoning of the Seventh Circuit and respectfully decline to follow it.

The Seventh Circuit asserts that the prefatory words "For purposes of this title" in section 483(a) unambiguously indicate that section 483 applies to the entire Code, including the gift tax provisions. The Seventh Circuit additionally believes that contracts which escape the imputed interest provisions of section 483 are within a "safe harbor" that prevents the recharacterization of principal as interest. The Seventh Circuit accordingly concludes that the principal payments on a contract which falls within the safe harbor may not be recharacterized as interest for purposes of gift tax valuation.

We agree that the prefatory language of section 483 is unambiguous, and that section 483 therefore applies to all sections of the Code to which it is relevant. However, we find nothing in the language of section 483 that indicates that this section has anything to do with valuation. The section merely characterizes payments as principal or interest, while gift tax valuation is concerned with the value of all payments, whether of principal or of interest. The character of a payment does not affect its value for gift tax purposes. Accordingly, we reaffirm our holding in *Ballard* that section 483 has no relevance to gift tax valuation. See *Cohen v. Commissioner,* 92 T.C. 1039, 1051 (1989).

The Seventh Circuit also discusses *Blackburn v. Commissioner,* 20 T.C. 204 (1953), which was decided before the enactment of section 483. The 2¼ percent interest charged under the contract in *Blackburn* was below the 4-percent market rate. The Seventh Circuit agrees that in *Blackburn* we properly discounted the principal amount under the contract at the 4-percent rate. The Seventh Circuit concludes that our holding in *Blackburn* was superseded by

section 483 when the interest rate used in a contract is as great as the interest rate used for purposes of section 483(c)(1)(B). We do not think, however, that a section intended to increase the accuracy of income reporting should be interpreted as preventing respondent from accurately calculating the amount of a gift.

Since petitioners are not entitled to rely on the 6-percent interest rate used for purposes of section 483, we must decide whether respondent properly used an 11-percent rate. Petitioners have the burden of proving that respondent's determination is incorrect. Rule 142(a). Petitioners assert that in 1981 the average rate of interest charged on contracts for deed in the United States was 6 to 8 percent. They refer to Congressional testimony in which a senator asked "Are contracts for deed prevalent in the 6 to 8 percent range or something like that," and the Assistant Secretary of the Treasury for Tax Policy responded "Right." The offhand nature of this answer does not give us much confidence in its evidentiary value. Petitioners also refer to Senate hearings in which an economist testified that the interest rate on contracts for deed in Minnesota averaged 6 to 8 percent. Petitioners argue that this evidence is not hearsay because, among other reasons, the economist's statements are more probative on the point than any other evidence which petitioners could procure through reasonable efforts. We disagree, because petitioners at a minimum could have brought in the economist as an expert witness who would have been subject to cross-examination. Petitioners also present an article with a graph that shows that interest rates on seller-financed real estate transactions were below Federal Land Bank rates in June 1981. We will not consider this graph because, among other reasons, a lower interest rate on seller-financed real estate transactions might be offset by a higher selling price. In fact, this possibility is suggested by the article that contains the graph. Petitioners have not shown that the market interest rate on loans similar to theirs was 6 to 8 percent.

Respondent asserts that the interest rate of 11 percent in the notice of deficiency was reasonable or perhaps too low. We are provided with several interest rate figures. In June

1981, the average prime rate was 20.03 percent, the average interest rate on conventional first mortgage loans for the purchase of a single family home was 14.12 percent for new purchases and 14.40 percent for existing home purchases, the interest rate on certain 3-month commercial paper was 16.13 percent, the interest rates on 1-year and 30-year U.S. Treasury obligations were 13.02 percent and 13.11 percent, respectively, and the Federal Land Bank of St. Paul interest rate was 10.75 percent. The lowest of these interest rates is the 10.75-percent rate of the Federal Land Bank of St. Paul. This rate is essentially equivalent to the 11-percent rate used by respondent. Given that all of the other interest rates are significantly higher, we hold that respondent correctly used an 11-percent interest rate to discount the contract payments.

Petitioners assert that respondent should not have discounted the contract payments over the 30-year term of the contract. They argue that it was unlikely that both petitioners would outlive the 30-year term of the contract, since both were in their mid-sixties when the contract was executed. Thus, it was likely that the purchasers would have to prepay a portion of the contract, shortening its term. However, petitioners presented no evidence regarding the amount of the expected prepayment. In the absence of this evidence the expected term of the contract cannot be determined. Accordingly, respondent correctly used the 30-year term for purposes of discounting the contract payments.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, JACOBS, GERBER, WRIGHT, WELLS, RUWE, and COLVIN, *JJ.*, agree with the majority opinion.

PARR and WHALEN, *JJ.*, dissent.